Allan B. ZUKERMAN, Harry Davis, MZD Real Estate 1, LLC, and Montgomery, Zukerman, Davis, Inc., Appellants,

v.

Robert L. MONTGOMERY and Dolores Montgomery, as Assignee of Robert L. Montgomery, Appellees.

No. 49A02–1006–CC–803.

Court of Appeals of Indiana.

April 25, 2011.

Ronald J. Waicukauski, Carol Nemeth Joven, Price Waicukauski & Riley, LLC, Indianapolis, IN, Attorneys for Appellants.

David L. Byers, Holwager, Byers and Caughey, Beech Grove, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Allan B. Zukerman ("Zukerman"), Harry Davis ("Davis"), MZD Real Estate 1, LLC ("MZD Real Estate"), and Montgomery, Zukerman, Davis, Inc. ("MZD," and together with Zukerman, Davis, and MZD Real Estate, the "Zukerman Parties") appeal the trial court's order granting motions to enforce a mediated settlement agreement between Zukerman, Davis, Robert Montgomery ("Robert"), and Dolores Montgomery ("Dolores," and Robert and Dolores together, the "Montgomerys"). The Zukerman Parties raise two issues, which we revise and restate as whether the court erred in granting the motions to enforce the mediated settlement agreement. We reverse and remand.

## COURSE OF PROCEEDINGS

The relevant facts follow. In December 2006, the Montgomerys filed a complaint against MZD under cause number 49D11–0701–CC–447 ("Cause No. 447"), which is the cause number from which this appeal arises, alleging that, under a promissory note in favor of Robert which had been assigned to Dolores and was past due, MZD owed the Montgomerys $534,803 together with interest, attorney fees, and costs.[1] MZD filed an answer, motion to dismiss, and counterclaim, in which it al-

leged that Robert owed it approximately $96,909.85 in connection with a condominium in Florida which Robert purchased from MZD.

In June 2007, Robert filed a complaint under cause number 49D01–0706–CC–24538 ("Cause No. 538") against MZD Real Estate alleging breach of and default under a land contract, which stated that MZD Real Estate purchased real estate commonly known as 22 E. 37th Street, Indianapolis, Indiana for a purchase price of $89,200 and that he is entitled to strict foreclosure, an award of damages, and an award of attorney fees.[2]

In July 2007, Zukerman filed a complaint under cause number 38D11–0707–PL–30564 ("Cause No. 564")[3] against Eco-Builders, LLC ("EcoBuilders") seeking $12,720 in unpaid rent pursuant to a lease for real estate located at 1934 N. Park Avenue, Indianapolis, Indiana.[4] EcoBuilders filed an answer and counterclaim against Zukerman alleging breach of fiduciary duty, that Zukerman improperly resigned from EcoBuilders and refused to make contributions and payments due and owing to EcoBuilders, and that EcoBuilders is entitled to an accounting from Zukerman of the proceeds taken from Eco-Builders.

In November 2007, under cause number 49C01–0711–CC–50106 ("Cause No. 106"), Fifth Third Bank, Indiana ("Fifth Third") filed a complaint against MZD Real Estate, Robert, Zukerman, Irwin Union Bank and Trust Company ("Irwin Union"), and

---

1. Dolores held a 43.43 percent ownership interest in MZD, and Allan Zukerman held a 53.54 percent ownership interest in MZD.

2. MZD held a one hundred percent membership interest in MZD Real Estate.

3. This cause was later transferred to cause number 49D11–0707–PL–30564, and the rec-

ord does not contain the CCS related to the new cause number.

4. Robert and Zukerman each held a fifty percent membership interest in EcoBuilders. EcoBuilders owned real estate located at 2153 N. Pennsylvania St., Indianapolis, Indiana.

Wisconsin Management Company, Inc. ("Wisconsin Management") which, as amended, alleged that MZD Real Estate defaulted on two promissory notes under which the aggregate principal sum due and payable was approximately $559,790.08, that MZD Real Estate executed mortgages, security agreements, and an assignment of leases, rents and profits in favor of Fifth Third on real estate commonly known as 3715 North Meridian Street, Indianapolis, Indiana, to secure payment of all indebtedness under the notes, and that Robert and Zukerman executed guaranties with respect to one or both of the notes.[5] On June 19, 2008, Robert filed a motion to substitute himself as plaintiff and real party in interest, and the court granted the motion on June 23, 2008.[6]

In August 2007, Zukerman and Davis filed a demand for arbitration against Robert with the American Arbitration Association under a partnership agreement dated July 7, 1982, which provided the parties would seek arbitration in the event of a dispute, asserting a claim in the amount of $1,600,000. The demand related to a loan to Robert from 1800 Associates,[7] which owned real estate located at 1800 N. Meridian St., Indianapolis, Indiana.

On November 4, 2008, a mediation hearing was conducted, at which the Montgomerys, Davis, and Zukerman were present. The Montgomerys, Zukerman, and Davis entered into a written agreement titled Full and Final Settlement of Arbitration and All Other Pending Matters (the "Settlement Agreement").[8]

On June 12, 2009, under Cause No. 538 and Cause No. 106, Robert filed motions to enforce the Settlement Agreement. Also on that date, under Cause No. 564, Eco-Builders filed a motion to enforce the Settlement Agreement. On August 10, 2009, under Cause No. 447, the Montgomerys filed a motion to enforce the Settlement Agreement.

On August 13, 2009, under Cause No. 538 and Cause No. 106, Robert filed motions citing Trial Rule 42(D)[9] requesting

---

5. Irwin Union and Wisconsin Management were named as party defendants to answer as to any interest they may have had in the real estate identified in the mortgages in favor of Fifth Third pursuant to a separate mortgage and pending lawsuit, respectively.

6. This motion is not included in the record on appeal. During her testimony at the March 9, 2010 hearing on the motion to enforce the Settlement Agreement, Dolores indicated that the Montgomerys "purchased the mortgage obligation and became the Plaintiff in the case." Transcript at 28.

7. 1800 Associates was a partnership in which Robert had 52.1 percent ownership, Zukerman had 39.8 percent ownership, and Davis had 8.1 percent ownership. According to the statement of the case of the Zukerman Parties' brief, with which the Montgomerys agree, the arbitration claim "arose out of a personal loan that [Robert] took from 1800 Associates. . . ." Appellant's Brief at 4.

8. The Settlement Agreement was erroneously dated October 4, 2008.

9. Ind. Trial Rule 42(D) provides in part:

When civil actions involving a common question of law or fact are pending in different courts, a party to any of the actions may, by motion, request consolidation of those actions for the purpose of discovery and any pre-trial proceedings. Such motion may only be filed in the court having jurisdiction of the action with the earliest filing date and the court shall enter an order of consolidation for the purpose of discovery and any pretrial proceedings unless good cause to the contrary is shown and found by the court to exist. . . . Upon completion of discovery and any pre-trial proceedings, each case which has been subject to the order of consolidation shall be ordered returned to the court in which it was pending at the time the order of consolidation was made unless, after notice to all parties and a hearing, the court finds that

the court to consolidate hearings on the motions to enforce the Settlement Agreement under Cause No. 447, and the court granted the motions. On August 25, 2009, under Cause No. 564, EcoBuilders filed a motion requesting the court to consolidate hearings on the motions to enforce under Cause No. 447, and the court granted the motion.

On January 5, 2010, following the consolidation of the various cause numbers under Cause No. 447, MZD Real Estate filed a motion for mediation, the court granted the motion on January 28, 2010 and ordered the parties to return to mediation, and the mediation was unsuccessful.

On March 8, 2010, MZD Real Estate and Zukerman filed a joint response to the motions to enforce the Settlement Agreement. In the response, MZD Real Estate and Zukerman argued that the "inherent theme of the [November 4, 2008] mediation was an attempt to reach a global settlement by and between the parties without the transfer of money," that "[t]he global skeleton Agreement was not the full, complete and sole agreement of the parties," and that "[r]ather, pursuant to Item No. 4 of the Agreement,[10] further mutual releases were to be drafted and executed by the parties following the conclusion of the mediation." Appellant's Appendix at 169, 170. MZD Real Estate and Zukerman argued that there were several "issues/problems with enforcement of the skeleton Agreement," including among other things

that "there are other individual and corporate owners who are not parties to this litigation," that "there exists [sic] multimillion dollar accounts receivable and payables owed by and to the various entities, parties to this action and third-parties, which will be affected by enforcement of this skeleton Agreement, but which accounts receivables and payables are not specifically designated" in the Settlement Agreement, that the Settlement Agreement does not identify "the litigation to which Item Nos. 9 and 4 refer and/or identify the Plaintiffs and Defendants of each pending litigation/suit," and that "[t]here is no performance timeframe or deadline outlined in the skeleton Agreement for relinquishment of the identified properties, relinquishment of claims, relinquishment of entities, the dismissal of claims or the execution of full and complete mutual releases." *Id.* at 173–174.

On March 9, 2010, the court held a hearing on the consolidated motions to enforce the Settlement Agreement, at which Dolores, Zukerman, and Davis testified. On March 16, 2010, the court issued an order granting the Montgomerys' August 10, 2009 motion to enforce mediated settlement agreement and instructed the parties to submit a proposed order to the court.[11] On April 19, 2010, MZD Real Estate filed a motion for attorney conference.

On April 21, 2010, the court approved the proposed order and judgment submitted by the Montgomerys.[12] On April 29,

---

the action involves unusual or complicated issues of fact or law or involves a substantial question of law of great public importance.....

10. Item No. 4 of the Settlement Agreement stated: "The parties shall execute full and complete mutual releases." Plaintiff's Exhibit No. 1.

11. The caption of this order indicates it was issued in the consolidated Cause No. 447 pro-

ceedings, and the order stated in part that "Plaintiffs' Motion to Enforce Mediated Settlement Agreement filed with the Court on August 10, 2009 is **Granted.**" Appellant's Appendix at 46. Similarly, the entry related to the order in the CCS under Cause No. 447 refers to the grant of the August 10, 2009 motion.

12. The trial court simply signed the proposed order and judgment submitted by the Montgomerys which was titled "PROPOSED OR-

the court denied the motion for attorney conference. On May 21, 2010, MZD, MZD Real Estate, and Zukerman filed a motion to correct error, which the court denied.

## ISSUE AND STANDARD OF REVIEW

The issue is whether the court erred in granting the motion to enforce the Settlement Agreement and approving the proposed order and judgment submitted by the Montgomerys. Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *In re Guardianship of Phillips*, 926 N.E.2d 1103, 1106–1107 (Ind. Ct.App.2010).

The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.*; *Rea v. Shroyer*, 797 N.E.2d 1178, 1181 (Ind.Ct.App.2003). When making this determination, we neither reweigh the evidence nor assess the credibility of the witnesses. *Ballew v. Town of Clarksville*, 683 N.E.2d 636, 639 (Ind.Ct.App.1997), *trans. denied.* We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1075 (Ind. Ct.App.2005); *Shriner v. Sheehan*, 773 N.E.2d 833, 841 (Ind.Ct.App.2002), *trans. denied.*

## DISCUSSION

The Zukerman Parties argue that the court did not have jurisdiction over Davis and other persons or entities who are not parties to the litigation, the court erred in enforcing the Settlement Agreement because its terms were not reasonably definite, the court did not have authority to enforce a Settlement Agreement that arose out of a dispute in arbitration, and the court erred in entering judgment in cases that were consolidated only for pretrial purposes. The Zukerman Parties argue that the Settlement Agreement "does not specify who is to pay for any such outstanding obligations, nor does it state the amount of any such obligations or even which properties had any outstanding obligations," and that "[i]f it is more than one person or entity who is liable, it does not state in what proportions each would be liable." Appellant's Brief at 18. The Zukerman Parties further argue that the Settlement Agreement "does not list or define any related entities" or "whether any of the named individuals had authority to release any claims on behalf of such entities or transfer the property of such entities." *Id.* at 19. The Zukerman Parties argue that it is unclear whether the persons who signed the Settlement Agreement did so "in their personal capacities or in any representative capacities," that "[t]his ambiguity is amplified where the evidence is that the properties listed in the settlement agreement were owned by various different individuals and/or entities, which in turn were owned by various individuals and/or entities," and that "[t]he agreement does not specify whether it is an entity or organization that is being relinquished, shares or interests in such entity or organization, or the assets or profits of such organization or entity." *Id.* at 19–20. The Zukerman Parties also argue that "[i]f the

DER AND JUDGMENT OF ROBERT L. MONTGOMERY, DOLORES MONTGOMERY AND ECOBUILDERS, LLC, FOLLOWING HEARING ON MARCH 9, 2010." Appellant's Appendix at 42. The caption of this order refers only to the proceedings under

Cause No. 564 between Zukerman and Eco-Builders. The order states in part: "The Motion to Enforce Mediated Settlement Agreement, filed in each of the above-captioned causes herein, be and hereby are granted." *Id.*

Montgomerys' interpretation of the settlement agreement is enforced, the result would be that the Montgomerys would receive all of the properties and the amounts due on any obligations from Zukerman, Davis and/or whichever entity or entities was obligated to pay." *Id.* at 22.

The Montgomerys argue that Davis impliedly consented to the jurisdiction of the court, the court did not err in entering judgment against other related entities, the Settlement Agreement was not ambiguous or unconscionable, the court had the authority to enforce the Settlement Agreement, and Zukerman and Davis failed to object to the court entering judgment on all the consolidated cases.

■■■ Settlement agreements are governed by the same general principles of contract law as any other agreement. *Fackler v. Powell,* 891 N.E.2d 1091, 1095 (Ind.Ct.App.2008), *trans. denied.* As a general rule the interpretation of the construction or legal effect of a contract is a question of law to be determined by the court. *Kokomo Veterans, Inc. v. Schick,* 439 N.E.2d 639, 643 (Ind.Ct.App.1982); *see also Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 501 (Ind.Ct. App.2007). The unambiguous language of a contract is conclusive and binding on the parties and the court, and the parties' intent is determined from the four corners of the document. *Four Seasons Mfg., Inc.,* 870 N.E.2d at 501. We will neither construe unambiguous provisions nor add provisions not agreed upon by the parties. *Id.*

■■■ To be valid and enforceable, a contract must be reasonably definite and certain. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.,* 906 N.E.2d 805, 813 (Ind. 2009) (citing *Wolvos v. Meyer,* 668 N.E.2d 671, 675–676 (Ind.1996) (stating that enforcement of an incomplete or ambiguous writing creates substantial danger that the court will enforce something neither party intended); *Wenning v. Calhoun,* 827 N.E.2d 627, 629 (Ind.Ct.App.2005) ("In order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained."), *trans. denied*); *see also Mead Johnson & Co. v. Oppenheimer,* 458 N.E.2d 668, 670 (Ind.Ct. App.1984) ("It is fundamental contract law that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained") (citations omitted). All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. *Conwell,* 906 N.E.2d at 813. Only essential terms need be included to render a contract enforceable. *Id.* A "contract must 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Wenning,* 827 N.E.2d at 629 (citing *McLinden v. Coco,* 765 N.E.2d 606, 613 (Ind.Ct.App.2002) (quoting Restatement (Second) of Contracts § 33(2) (1979))). This court cannot make a contract for the parties, nor are we at liberty to revise a contract, or supply omitted terms while professing to construe it. *Mead Johnson,* 458 N.E.2d at 670 (citations omitted). To be enforceable, contracts must be sufficiently definite, and amounts and prices must be fixed or subject to some ascertainable formula or standard. *Inman's Inc. v. City of Greenfield,* 412 N.E.2d 126, 129 (Ind.Ct.App.1980).

The Settlement Agreement provides:

***Full and Final Settlement of Arbitration Dispute and All Other Pending Matters***

**Allan Zukerman and Harry Davis**

**And**

**Robert Montgomery and Delores [sic] Montgomery**

1. The parties named above shall be designated Plaintiff (Allan Zukerman and Harry Davis) and Defendant (Robert Montgomery and Delores [sic] Montgomery). In full and final settlement of all claims pending between the parties, Plaintiffs and Defendants shall relinquish all claims against the other including all claims for any and all related entities and individually, except as relates to the enforcement of this Agreement.

2. Plaintiffs shall relinquish to the Defendant all of the following free and clear of all obligations, liens and encumbrances:

    1. 1800 North Meridian;

    2. 1812 North Meridian;

    3. 1800 Associates as of January 1st, 2006;

    4. New Yorker Apartments free of mortgages liens/taxes;

    5. 22 East 37th Street;

    6. 2153 North Pennsylvania Avenue;

    7. 2111 Broadway;

    8. Florida Condominium—The Landings, 1200 Steamboat Bend No. 502, Ft. Myers, Florida; and,

    9. Release and dismissal of all pending lawsuits.

3. Defendants shall relinquish to the Plaintiffs all of the following free and clear of all obligations, liens and encumbrances:

    1. MZD Stock (43%);

    2. Claims against Techcom judgment;

    3. Relinquish claim for rent at 1800 North Meridian; and

    4. Release and dismissal of all pending suits.

    5. Leased items at 1900 N. Meridian.

4. The parties shall execute full and complete mutual releases.

5. The mediation costs shall be divided equally between the parties. To the extent that any disputes regarding the scope and effect of this Agreement may occur hereafter, the dispute shall be mediated by S.R. (Chic) Born.

Plaintiff's Exhibit No. 1.

We note that Davis was not initially a party to any of the four lawsuits pending in the trial court, and the Montgomerys do not point to the record to show that Davis was added as a party for the purpose of enforcing the Settlement Agreement or otherwise. Further, while Davis is a party to the arbitration proceedings and the Settlement Agreement may have been the result of mediation efforts initiated under the arbitration proceeding, the Montgomerys do not point to the record to show that the arbitration proceeding was before the trial court.

■■■ We find the language of the Settlement Agreement is not reasonably certain "in the terms and conditions of the promises made, including by whom and to whom." *See Conwell,* 906 N.E.2d at 813. Paragraphs 2 and 3 of the Settlement Agreement provide that the parties shall relinquish certain items "free and clear of all obligations, liens and encumbrances."[13] Plaintiff's Exhibit No. 1. Subparagraphs 1, 2, 4, 5, 6, 7, and 8 of paragraph 2, and subparagraphs 3 and 5 of paragraph 3, appear to identify certain real property (or rent or leased items associated with certain real property) by street address or common name. However, according to the

---

**13.** Subparagraph 4 of paragraph 2 states that the item shall be relinquished "free of mortgages liens/taxes." Plaintiff's Exhibit No. 1.

Outline of Inter–Related Entities and Real Estate (the "Outline") attached as an exhibit to the March 8, 2010 joint response to the motions to enforce the Settlement Agreement, most if not all of the real properties identified in those subparagraphs are owned in whole by various companies and partnerships. There is no indication whether the Montgomerys, Zukerman, and Davis signed the Settlement Agreement in their individual capacities or on behalf of the various businesses in which they may have had some interest. Also unclear is the extent to which each of the parties had the authority to act on behalf of the companies and partnerships.

Specifically, according to the Outline, the "1800 North Meridian" property is owned by 1800 Associates, a partnership in which Robert, Zukerman, and Davis are partners. Appellant's Appendix at 177. "1812 North Meridian" is owned by 1812 Associates, which in turn is owned by Robert and Zukerman. *Id.* at 178. The "New Yorker Apartments" and "22 East 37th Street" are owned by MZD Real Estate, a limited liability company which is owned in whole by MZD, which in turn is owned by Dolores, Zukerman, and Joe Carmon. *Id.* at 177. "2153 North Pennsylvania Avenue" is owned by EcoBuilders, which is owned by Robert and Zukerman. *Id.* "2111 Broadway" is owned by "NOW, INC.," which in turn is owned by Robert and Zukerman. *Id.* The "Florida Condominium—The Landings, 1200 Steamboat Bend No. 502, Ft. Myers, Florida" is owned by Robert, Zukerman, and "A. Sumrall." *Id.* at 178. The Outline does not indicate whether the property at this address is owned in the individual capacity of the persons identified or, similar to the other properties, by a company or partnership.

The language of the Settlement Agreement could be interpreted in a number of ways. For instance, Paragraph 2 could be interpreted to mean that Zukerman and Davis shall relinquish the real properties listed to the extent that they own those properties in their individual capacities; however, given the Outline and the fact that most if not all of the properties are not held in the names of Zukerman and Davis individually but in the name of the businesses and holding companies in which Zukerman and Davis have some ownership interest, such an interpretation would appear to render much of the contents of the subparagraphs essentially meaningless or inapplicable.

On the other hand, the language of Paragraph 2 could be interpreted to mean that Zukerman and Davis shall relinquish their respective membership, partnership, or other ownership interests, to the extent they possess such interests, in the businesses and companies which hold the identified properties to the Montgomerys. In that case, the language regarding "free and clear of all obligations, liens and encumbrances" could be interpreted at least one of two ways. First, the language could refer to any obligations, liens and encumbrances on the membership, partnership or other ownership interests. Under this interpretation, Zukerman and Davis would be required to transfer their interests in the businesses free of any encumbrances to the Montgomerys, and Zukerman and Davis would presumably not be required to pay off any mortgage or debt associated with the companies or partnerships' ownership or financing of the real properties.

Under this interpretation, Zukerman and Davis would not be required to pay off financing which has benefited all of those persons who are owners of the companies which hold the properties, including the Montgomerys, and who have benefited from the financing. However, this interpre-

tation also appears to have problems. For instance, under such an interpretation, Zukerman would be required to transfer any ownership interest he may have in MZD Real Estate, the limited liability company which owns the New Yorker Apartments and the 22 E. 37th Street property, to the Montgomerys. However, the Outline shows that Zukerman does not own any membership interest in MZD Real Estate. Rather, MZD Real Estate is owned in full by MZD, in which Zukerman does have an ownership interest. However, it does not appear the parties intended for Zukerman to transfer his shares in MZD to the Montgomerys because subparagraph 1 of paragraph 3 states that the Montgomerys shall relinquish to Zukerman and Davis their interests in "MZD Stock." Plaintiff's Exhibit No. 1. The Settlement Agreement does not make clear that the parties intended for MZD to spin off MZD Real Estate or that MZD Real Estate must divest itself of the properties. Also, even if Zukerman relinquished shares of MZD with a value equivalent to the value of the real properties, Zukerman would still retain shares of MZD and thus, absent some divesture of MZD Real Estate or the properties, Zukerman would still retain some ownership of the properties.

Alternatively, the language regarding "free and clear of all obligations, liens and encumbrances" could refer to any obligations, liens and encumbrances in connection with or on the real properties. Under this interpretation, Zukerman and Davis may be required to pay off any mortgages or debt associated with the companies or partnerships' financing of the identified properties prior to the relinquishment to the Montgomerys of their respective ownership interests in the companies and partnerships which hold those properties. In this scenario, it is also unclear whether the parties intended for Zukerman and Davis to pay off the entirety of any debt associated with the financing of the properties or just the parties' pro rata share of the debt based upon the respective parties' current shares of the companies or partnerships which hold the properties. Further, the fact that subparagraph 4 of paragraph 2 specifically includes the phrase "free of mortgage liens/taxes" after "New Yorker Apartments" may or may not indicate that the parties intended for Zukerman to pay off any financing associated with MZD Real Estate's ownership of that specific property only prior to relinquishing the property or interest in MZD Real Estate to the Montgomerys.

Similarly, under subparagraph 1 of paragraph 3, which requires Dolores to relinquish her stock in MZD to Zukerman and Davis, it is unclear whether the parties intended for MZD to retain ownership of MZD Real Estate or for MZD Real Estate to retain ownership of the 22 E. 37th Street property or the New Yorker Apartments. According to the Outline, Davis does not currently own any interest in MZD. And subparagraphs 4 and 5 of paragraph 2 state that those properties are to be relinquished to the Montgomerys.

We will not attempt to determine which, if any, of these interpretations may have been intended by the parties to the Settlement Agreement. As previously stated, we cannot make a contract for the parties and we are not at liberty to supply omitted terms while professing to construe a contract. *See Mead Johnson,* 458 N.E.2d at 670. Further, there is considerable ambiguity with respect to the debts to be paid by the parties, and the Settlement Agreement does not contain any ascertainable formula or standard for determining the extent of each party's obligations to relinquish shares or property interests free and clear of encumbrances. *See Inman's Inc.,* 412 N.E.2d at 129 (noting that amounts

and prices must be fixed or subject to some ascertainable formula or standard). We also observe that a "contract must provide a basis for determining the existence of a breach and for giving an appropriate remedy," *see Wenning*, 827 N.E.2d at 629 (citation and internal quotation marks omitted), and we cannot ascertain with any degree of confidence based upon the language of the Settlement Agreement what actions or omissions by the parties may constitute a breach of the terms of the Settlement Agreement or the remedy a court could order to make the non-breaching party or parties whole in the event of any breach.

Based upon the record and the language of the Settlement Agreement, we conclude that the material and essential terms of the Settlement Agreement are not reasonably definite and certain so that the intention of the parties may be ascertained. *See Wenning*, 827 N.E.2d at 629 (holding that the contract which involved the conveyance of real property was not enforceable as a matter of law because it was too indefinite in its essential terms, finding

that the subject matter of the contract was not identifiable from the terms of the contract, and noting that a contract's material terms must be reasonably definite and certain so that the intention of the parties may be ascertained, and that the court cannot re-write and then enforce contracts which to the knowledge of the court, the parties themselves did not enter into). Accordingly, the trial court erred in granting the consolidated motions to enforce the Settlement Agreement. We reverse the court's grant of the consolidated motions to enforce the Settlement Agreement and remand for further proceedings.[14]

For the foregoing reasons, we reverse and remand for further proceedings.

Reversed and remanded.

ROBB, C.J., and RILEY, J., concur.

---

14. Because we reverse the court's grant of the motions to enforce the Settlement Agreement on the basis that the Settlement Agreement is not sufficiently definite and certain, we do not address the Zukerman Parties' other arguments on appeal.